F. W. Bradshaw, as Receiver of Enochs Lumber & Manufacturing Co., Appellant, v. American Advent Christian Home and Orphanage, a corporation, and Austin Miller, as Trustee, Appellees.

199 So. 329

En Banc

Opinion Filed December 10, 1940

Rehearing Denied January 9, 1941

*H. T. Rogers,* for Appellant;

*L. R. Milton,* for Appellees.

BROWN, J.—F. W. Bradshaw, as receiver of Enochs Lumber & Manufacturing Co., a corporation, appellant here, plaintiff below, filed a creditor's bill against the American Advent Christian Home & Orphanage, a corporation, and Austin Miller, as trustee of the Mary J. Lindsley Estate, seeking to subject the income of this estate to the payment of a judgment debt in favor of Enochs Lumber Co. against the American Advent Christian Home and Orphanage.

The Mary J. Lindsley Estate was established by the last will and testament of Mary J. Lindsley, admitted to probate

and record November 16, 1929. The testatrix first provided that all her just debts be paid, and the balance of her estate she devised and bequeathed "to Austin Miller in trust and confidence and for the use and benefit of the American Advent Christian Home and Orphanage, a corporation not for profit under the laws of Florida, upon the terms and conditions and for the purposes hereinafter set out; that is to say that the said trustee may, in his discretion, sell, mortgage and convey all or any portion of my said estate as he shall in his discretion see fit, for the betterment of my estate and/or for the obtaining and investing of funds for the use and benefit of the beneficiary herein, and all sums derived from my estate and reinvested shall become a part of the trust estate, which shall be known as the 'Mary J. Lindsley Estate.'" The testatrix directed the trustee "to pay over to the beneficiary named herein, to the officer or officers of said beneficiary legally entitled to receive the same, semi-annually, the net income of my estate, less such amount as in his discretion, with the approval of said county judge, he shall deem expedient to be retained as a sinking fund for the maintenance and betterment of said estate, or for the retirement of any obligation or obligations. . . . In the event that my said trustee should determine that the officers of the said beneficiary are making or intend making an improper use of the said funds he shall so inform them stating his reasons for his opinion, and then in the event the said officers cannot satisfy my said trustee within thirty days after the receipt of said notice of the use to which they are putting, or intend to put, the said funds, either party may apply to the County Judge in and for Duval County, Florida, and he shall determine by order whether or not said funds shall be retained by said trustee and applied to the corpus of my said estate, or be paid over to the officers of the beneficiary. Any funds so withheld shall be applied to the

principal or corpus of my said estate and be and become a part thereof. In the event of the dissolution of my said beneficiary or that it should in any manner cease to exist or cease to be a charitable home and orphanage, as it now is, then in that event it is my will that the Children's Home Society of Florida shall be and become the beneficiary hereunder in the place and stead of the said beneficiary first named."

The bill of complaint alleges that on May 15, 1935, the Enochs Lumber & Manufacturing Co. recovered a judgment for $2,468.04 and costs against the American Advent Christian Home and Orphanage in Suwannee County, recorded there and in the foreign judgment book for Duval County. Execution in both counties was returned *nulla bona*. It is further alleged that "no part of said judgment or said execution has been paid; that the said judgment is valid, outstanding, not reversed, satisfied or vacated, or otherwise modified; that the said execution is valid and unsatisfied . . ." The amended bill of complaint alleges that the above judgment "was upon a claim as a result of an indebtedness for lumber and materials sold by it to the defendant, American Advent Christian Home and Orphanage, at its request, and used by said defendant in making improvements and repairs to its property in Suwannee County, Florida." A further amendment alleges "that the orphans who had been and are committed to the care of the defendant, and which defendant cares for by providing a suitable home, have been and are receiving great benefit from the sale of the lumber and materials by plaintiff to defendant, which constituted the basis of the judgment above mentioned, in this: that the said lumber and materials were used by the defendant in making the improvements and repairs mentioned to the buildings of the defendant, in which buildings the said orphans live, and were and are cared for by the defendant,

and said buildings are maintained for the purposes of caring for said orphans; that a large part of the materials so purchased by said defendant consisted of window frames used by it in said buildings, while the remainder was used for making additions and repairs to the said buildings mentioned, that from the use of said lumber and materials by defendant, the orphans derived and are deriving great benefit, as aforesaid."

The circuit court sustained a motion to dismiss the bill of complaint, and upon the complainant failing to amend, final judgment was entered against him, from which final judgment this appeal was taken, the plaintiff assigning as error the granting of the motion to dismiss.

The question presented is whether or not the judgment creditor of the orphanage, execution of which judgment has been returned *nulla bona,* can by a suit in equity subject the income of such above described trust estate in the hands of the trustee, to the payment of such judgment. In this connection it is necessary to examine the will creating the trust in order to ascertain the intention of the testatrix and to ascertain further whether or not the orphanage has a vested, alienable interest in the income directed to be paid to it.

In construing the will, we find that the estate was left to Miller in trust "for the use and benefit" of the orphanage, a charitable corporation. If the trustee was to pay over the income to the charitable corporation, which in turn was to be trustee for the orphans, there would be two trusts created. The beneficiary of the primary trust would be the orphanage and the ultimate beneficiaries the orphans to receive aid from the orphanage.

The more likely alternative, and we think the clear intention as expressed by the will, is that the trustee, Miller, was to pay over the income to the orphanage as an absolute gift. The estate was left in the hands of the trustee, the income

from the estate to be paid to the charitable corporation as an absolute gift, the corporation to use the income so received for all or part of its corporate purposes. The definiteness of the *cestui* is not a bar to the trust being called a charitable trust because the practical effect is a wide distribution of social advantages. *In Re:* Estate of Merchant, 143 Cal. 537, 77 P. 475; Harges v. Zander, 314 Ill. 170, 145 N. E. 363; Kasey v. Fidelity Trust Co., 131 Ky. 609, 115 S. W. 739; Prime v. Harmon, 120 Me. 299, 113 A 738.

Where a gift is made to a corporation for purposes consistent with its charter, the gift will if possible, be construed as a gift absolute to the corporation with directions as to its use, or possibly upon a condition, rather than in trust. Such a gift may be made of the income of an estate. Wells v. Commissioner of Internal Revenue (C. C. A.) 63 F (2d) 425, 438. In the instant case, the trustee was to collect the income and pay it to the American Advent Christian Home and Orphanage, a charitable corporation. Such a gift places a duty on the part of the corporation to use the income for its corporate purposes. The State, through Attorney General, could force the corporation to live within its charter, but here the testatrix conditioned the gift so as to allow the trustee to object to any *ultra vires* use of the money so received from the trust estate.

There was no discretion vested in the trustee as to the payment of the net income. The corporation received a gift of the net income, due absolutely, conditioned only by the provision allowing the trustee to question the use of the money for *ultra vires* purposes. Without such provision the State, through the Attorney General, alone could question the corporation's use of the income so paid.

The general rule is that where one has any "interest in property which he may alien or assign, that interest, whether legal or equitable, is liable for the payment of his debts."

Croom v. Ocala Plumbing and Electric Co., 62 Fla. 460, 57 So 243. The interest of a *cestui que* trust in trust property is subject to claims of creditors where it is a vested and determinate interest with a right of present enjoyment and alienation. 65 C. J., Sec. 307, and cases cited. Where the income is to be applied "for the use (and benefit) of" the *cestui que* trust, a court of equity may direct application of the income to the payment of his debt, as that would be an application of it for his use. "Very often to pay the debts of one would be to apply money 'for his use' in a higher degree and in a more serviceable form than in any other way." Huntington v. Jones, 72 Conn. 45, 43 A 564, 566.

The record states that the materials upon which the judgment debt was founded were purchased for the use and benefit of the orphans. The trustee has not questioned, as allowed by the provisions of the will above quoted, the application of his income to the payment of the debt. He simply denies the right of the plaintiff to maintain such an action in equity. Certainly the purchase of materials and their application to the building and repairing of living quarters for the inmates of the orphanage would be a proper corporate use, and if so the payment of a debt owing for materials purchased for such purposes would be equally for the benefit and use of the orphans.

It is stated in Hillsborough County v. Dickenson, 125 Fla. 181, 169 So. 734.

"As now applied, a 'creditor's bill' is one brought by a creditor who has secured a judgment at law, and who has in vain attempted to satisfy it at law, but after finding he cannot do so sues in equity for the purpose of subjecting property of the debtor to the payment of his judgment which cannot be so subjected by execution at law. The nature, purpose, and scope of a creditor's bill is to bring into exer-

cise the equitable powers of the court to enforce the satisfaction of a judgment by means of an equitable execution, because execution at law cannot be enforced. It is in the nature of an equitable exeuction, or equitable relief, which is granted solely on the ground that there is no remedy at law. . . .

"The main purpose of a creditor's bill being in aid of creditors who have exhausted their legal remedies, a judgment creditor who has done this may pursue in a court of equity any equitable interest, trust, or demand of his debtor, in whosesoever hands it may be found." Citing numerous authorities.

It appears from the bill of complaint that the creditor has recovered a judgment and levied execution, which was returned *nulla bona*. Having exhausted his legal remedies, the creditor may by means of a creditor's bill pursue in the equity court any equitable interest, trust, or demand of his debtor, and may reach property in which debtor has an equitable interest, legal title to which is in another. (Comp. Gen. Laws, 1927, Sec. 5035.)

Reversed.

TERRELL, C. J., WHITFIELD, BUFORD, J. J., concur.

CHAPMAN, J., dissents.